IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAHINNSLERTH OROZCO**, 13284 Kenny Road, Woodbridge, VA 22193,<br><br>      Plaintiff,<br><br>v.<br><br>**CHRISTOPHER A. WRAY**, Director of the Federal Bureau of Investigation, in his official capacity, 935 Pennsylvania Avenue, NW, Washington, D.C. 20535,<br><br>and<br><br>**WILLIAM P. BARR**, Attorney General of the United States, in his official capacity, 950 Pennsylvania Avenue, NW, Washington, D.C. 20530,<br><br>      Defendants. | Case No. 1:19-cv-3336<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

1. This suit seeks to put an end to civil rights injuries that the Federal Bureau of Investigations ("FBI") has committed in violation of Section 508 of the Rehabilitation Act of 1973 (Section 508), 29 U.S.C. § 794d. The FBI has a policy and practice of procuring, maintaining, and using desktop, mobile, and web-based software applications without regard for the longstanding accessibility standards required by Section 508. The FBI's failure to comply with these standards prevents blind employees such as Plaintiff from effectively and independently using screen access software to access critical systems that the FBI requires use of for employment.

2. The FBI has procured, maintained, and is using software systems that Plaintiff

Jahinnslerth Orozco, a blind federal employee, and other disabled federal employees, cannot use to access information in a manner that is comparable to the access enjoyed by nondisabled colleagues. Blind employees use many accessible computer software programs and websites by deploying keyboards in conjunction with screen access software that converts visual screen information into synthesized speech or into braille through a connected refreshable display. Unless the design of software applications follows well-established accessibility standards, blind persons may be unable to gain equal access to and use of that technology.

3. Despite Mr. Orozco's repeated reports of inaccessible technology and despite his ongoing attempts to get the FBI to provide accessible technology as required by the law, the FBI continues to develop, procure, maintain, and use inaccessible electronic and information technology. Mr. Orozco has exhausted administrative remedies with respect to these violations.

4. Mr. Orozco faces irreparable harm, as the FBI's use of this inaccessible electronic and information technology has the effect of limiting Mr. Orozco's employment opportunities and his ability to do his job effectively. Rather than being able to work alongside his sighted colleagues, Mr. Orozco is relegated to relying upon alternative accommodations and methods that do not allow him to independently use the FBI's critical software systems.

5. Mr. Orozco seeks declaratory and injunctive relief, compensatory damages, reasonable attorneys' fees and costs, as well as other appropriate relief as determined by this court, for the FBI's violations of his rights.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1343, and 2201. This action is authorized and instituted pursuant to subsection (f)(3) of Section 508, 29 U.S.C. § 794d(f)(3), which incorporates by reference Section 706 of Title VII of the Civil Rights

Act of 1964, 42 U.S.C.§ 2000e-5(e)(3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

7. Defendants' primary places of business are in Washington, D.C., where their headquarters are located.

8. The acts and injuries complained of herein occurred in Washington, D.C.

9. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because Defendants have their headquarters in this district, because Defendants do business in this district, and because the acts complained of that constitute violations of Section 508 occurred in this district.

## PARTIES

10. Plaintiff Jahinnslerth Orozco is a resident of Arlington, Virginia and is employed full time in the District of Columbia.

11. Mr. Orozco is blind and is thus an individual with a disability as defined by Section 7 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20). As a blind computer user, Mr. Orozco uses screen access software that converts digital information to synthesized speech.

12. Mr. Orozco is currently employed as an Intelligence Analyst for the FBI. He has worked there as an analyst since July 15, 2012.

13. The FBI is a division of the U.S. Department of Justice, an executive agency of the United States Government subject to the accessibility requirements of Section 508, 29 U.S.C. § 794d(a)(1).

14. The FBI and the Department of Justice have their headquarters and principal places of business in Washington, D.C.

15. Christopher A. Wray is the current Director of the FBI, and is sued in his official capacity.

16. William P. Barr is the current Attorney General of the United States, and is sued in his

official capacity.

## ADMINISTRATIVE PROCEDURES

17. On April 29, 2019, Plaintiff Jahinnslerth Orozco timely filed a complaint alleging violations of Section 508 with the FBI, as prescribed by 29 U.S.C. § 794d(f)(2), 28 C.F.R. § 39.170(d)(4), and 29 C.F.R. § 1614.106(a).

18. On May 9, 2019, upon receiving notice that his complaint had been accepted, Mr. Orozco filed a courtesy copy of his complaint with the Accessibility Program Office of the Office of the Chief Information Officer ("OCIO").

19. By letter dated August 7, 2019, the FBI issued a final agency decision to dismiss Mr. Orozco's complaint filed subject to the requirements of 29 U.S.C. § 794d(f)(2), 28 C.F.R. § 39.170(d)(4), and 29 C.F.R. § 1614.106(a), providing notice that Mr. Orozco had 90 days to file a civil action.

20. It also directed Mr. Orozco to speak with the OCIO regarding the status of his complaint.

21. To date, Mr. Orozco has not received a report of investigation of his complaint from anyone at the FBI.

22. The FBI must furnish such a report within 180 days of receiving such a complaint. 28 C.F.R. §§ 39.170(f)(1), (g)(1)-(3), & (h); 29 C.F.R. §§ 1614(108(e) & (f).

23. 180 days have elapsed since Mr. Orozco filed his complaint with the FBI.

24. Mr. Orozco has exhausted all administrative procedures required before filing this action under 29 C.F.R. §§ 1614.108(g) & 1614.407(b).

25. Mr. Orozco is further empowered to file this action directly under 29 U.S.C. § 794d(f)(3).

26. All conditions precedent to Mr. Orozco's filing this action have been fulfilled.

## STATEMENT OF FACTS

27. The FBI uses several web-based and other software systems that are inaccessible to blind employees who use screen access software.

28. Sentinel is a web-based case management system developed and used by the FBI.

29. Intelligence Analysts and other employees use Sentinel to review and manage case files, create and review official communications, and process incoming leads.

30. Because Sentinel is inaccessible, Mr. Orozco cannot perform these vital functions efficiently and independently.

31. The FBI could have developed Sentinel to conform to Section 508 standards that would have made it accessible to Mr. Orozco and other blind FBI employees, but did not do so.

32. The FBI could have provided Mr. Orozco and other blind employees with an alternative means of accessing Sentinel that allowed them to independently use the information and data involved, but did not do so.

33. The Enterprise Process Automation System ("EPAS") is a web-based software system developed and used by the FBI.

34. Mr. Orozco and other FBI employees use EPAS to perform administrative tasks such as travel requests, expense reimbursement, security alerts, access to applications and promotions, and outside work alerts.

35. Many of these functions require Mr. Orozco and other FBI employees to enter sensitive personal information.

36. Because EPAS is inaccessible, Mr. Orozco cannot perform these required functions efficiently and independently.

37. The FBI could have developed EPAS to conform to Section 508 standards that would have made it accessible to Mr. Orozco and other blind FBI employees, but did not do so.

38. The FBI could have provided Mr. Orozco and other blind employees with an alternative means of accessing EPAS that allowed them to independently use the information and data involved, but did not do so.

39. The FBI procured and uses web-based analytics software from Palantir Technologies ("Palantir").

40. FBI analysts use Palantir to tie disparate intelligence resources together, search across and manage those resources, and track relationships among disparate entities.

41. Because Palantir is inaccessible, Mr. Orozco cannot perform these vital functions efficiently and independently.

42. The FBI could have either required Palantir to make its software conform to Section 508 standards that would have made it accessible to Mr. Orozco and other blind FBI employees, or procured or developed similar software that conformed to those standards, but did not do so.

43. The FBI could have provided Mr. Orozco and other blind employees with an alternative means of accessing Palantir that allowed them to independently use the information and data involved, but did not do so.

44. The Global Mission Analytics ("GMAN") system is a web-based software system developed and used by the FBI.

45. FBI analysts use GMAN to search across internal and external intelligence resources.

46. Because GMAN is inaccessible, Mr. Orozco cannot perform these vital functions efficiently and independently.

47. The FBI could have developed GMAN to conform to Section 508 standards that would have made it accessible to Mr. Orozco and other blind FBI employees, but did not do so.

48. The FBI could have provided Mr. Orozco and other blind employees with an alternative

means of accessing GMAN that allowed them to independently use the information and data involved, but did not do so.

49. The FBI uses Virtual Private Networking ("VPN") misattribution software to enable analysts to securely and anonymously access external data sources without identifying that access as coming from the FBI.

50. Because the VPN software is inaccessible, Mr. Orozco cannot independently access those data sources, as required for efficient and effective assessment and analysis of intelligence information.

51. The FBI could have developed or procured VPN software that conformed to Section 508 standards that would have made it accessible to Mr. Orozco and other blind FBI employees, but did not do so.

52. The FBI could have provided Mr. Orozco and other blind employees with an alternative means of securely and anonymously accessing external data sources that allowed them to independently use the information and data involved, but did not do so.

53. The FBI uses secure mobile applications that it developed or procured to run on Android mobile devices.

54. FBI employees use these mobile applications for messaging, calendars, contact management, and other typical and specialized mobile application functions.

55. Because these secure mobile applications are inaccessible, Mr. Orozco and other blind FBI employees cannot independently access their functions, as their sighted colleagues can.

56. The FBI could have developed or procured secure mobile applications that conformed to Section 508 standards that would have made them accessible to Mr. Orozco and other blind FBI employees, but did not do so.

57. The FBI could have provided Mr. Orozco and other blind employees with an alternative

means of accessing these secure mobile applications that allowed them to independently use the information and data involved, but did not do so.

58. The FBI uses other software systems that it developed or procured for administrative and job-specific functions.

59. Because these systems are inaccessible, Mr. Orozco and other blind FBI employees cannot independently access their functions, as their sighted colleagues can.

60. The FBI could have developed or procured systems that conformed to Section 508 standards that would have made them accessible to Mr. Orozco and other blind FBI employees, but did not do so.

61. The FBI could have provided Mr. Orozco and other blind employees with an alternative means of accessing these systems that allowed them to independently use the information and data involved, but did not do so.

62. The FBI has not implemented adequate and effective processes for determining the Section 508 compliance of the information technology it develops procures, maintains, or uses.

63. The inability by Plaintiff and other disabled federal employees to gain equal access to and use of the services, information and data underlying the systems and applications described herein is ongoing.

## CAUSE OF ACTION

### COUNT I: Violations of Section 508 of the Rehabilitation Act, 29 U.S.C. § 794d

64. Plaintiff incorporates by reference all the allegations of facts maintained in the previous paragraphs.

65. The FBI has failed to ensure that the information technology it develops, procures, maintains, or uses allows individuals with disabilities who are Federal employees to have

access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities, in violation of 29 U.S.C. 794d(a)(1)(A)(i).

66. Because the harm to individuals with disabilities who are Federal employees is ongoing, the FBI's violation of 29 U.S.C. § 794d continues as of the date of the filing of this complaint.

67. Sentinel, EPAS, Palantir, GMAN, and other web-based software systems are web-based intranet applications that present web-based intranet information. As such, they are subject to the requirements of 36 C.F.R. § 1194.22, which applies to web-based intranet and internet information and applications.

68. Those systems, as well as the VPN software, secure mobile applications, and other non-web-based systems are also subject to the requirements of 36 C.F.R. § 1194.21, covering software applications.

69. Those systems and applications contain a variety of access barriers that prevent equal access to and independent use of it by Plaintiff and other blind persons using keyboards and screen access software.

70. The FBI had knowledge of or was deliberately indifferent to the inaccessibility of those systems and applications for blind users and still chose to develop, procure, maintain, or use them.

71. The accessibility standards and requirements under Section 508 are long-standing, well established by regulation, and well-known to the FBI, rendering the policies and conduct complained of either intentional or deliberately indifferent.

72. As a result of these actions, the FBI has deprived Mr. Orozco of the experiences and knowledge afforded to sighted FBI employees.

73. As a result of the FBI's conduct, Mr. Orozco has suffered and will continue to suffer

discrimination because of his disability.

74. As a result of the FBI's conduct, Mr. Orozco has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jahinnslerth Orozco respectfully requests that this court:

a) Issue a declaration of the rights and duties of the respective parties;

b) Grant a permanent injunction enjoining the FBI from using Sentinel, EPAS, Palantir, GMAN, its current VPN software and secure mobile applications, or any other electronic and information technology that is not compliant with Section 508 standards unless and until such technology is made compliant with those standards;

c) Order the FBI to:

1) conduct both automated and user testing of all new and updated technology developed, procured, maintained, or used by the FBI for compliance with Section 508 standards, and

2) correct any problems discovered through such testing to ensure that persons with disabilities have access to information that is equivalent to persons without disabilities;

d) Order the FBI to adopt and implement standard contract language for technology purchases that requires compliance with Section 508 standards;

e) Order the FBI to review, update, publicize, and train its employees regarding its processes for employees and members of the public to make Section 508 complaints;

f) Grant such other injunctive relief as may be appropriate;

g) Order the FBI to make Mr. Orozco whole by providing economic and non-economic compensatory damages in amounts to be proven at trial;

h) Award Mr. Orozco his reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action;

i) Award Mr. Orozco pre-judgment and post-judgment interest; and

j) Grant such further relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

DATED: November 5, 2019                                  Respectfully submitted,

*/s/ Albert Elia*

Albert Elia (aelia@trelegal.com)
D.C. Bar No. 1032028

TRE Legal Practice
1155 Market Street, 10th Floor
San Francisco, CA 94103
(415) 873-9199

*Attorneys for Plaintiff Jahinnslerth Orozco*