UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAHINNSLERTH OROZCO,<br><br>*Plaintiff*,<br><br>v.<br><br>PAMELA BONDI,<br><br>*Defendant*. | Civil Action No. 19-3336 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jahinnslerth Orozco brings this suit against Attorney General of the United States Pamela Bondi, in her official capacity, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in connection with his employment at the FBI. ECF No. 1.[1] The Attorney General moves for partial dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 45. For the reasons explained below, the court will grant the Attorney General's motion and dismiss Mr. Orozco's claims that are based on the following technologies (collectively, "the four systems"): Sentinel, Palantir Technologies software ("Palantir"), Global Mission Analytics ("GMAN") system, and Virtual Private Networking ("VPN") misattribution software.

**I.    STATUTORY BACKGROUND**

Section 508 imposes requirements on the accessibility of technologies for individuals with disabilities. *See* 29 U.S.C. § 794d. As relevant here, it requires federal agencies to "ensure . . . that

---

[1] Because this is an official-capacity suit, Attorney General Bondi is automatically substituted in for her predecessor under Federal Rule of Civil Procedure 17(d).

the electronic and information technology allows . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." *Id.* § 794d(a)(1)(A)(i).

Section 508 expressly exempts "national security systems" from its accessibility requirements. *Id.* § 794d(a)(5); *see Orozco v. Garland*, 60 F.4th 684, 690 n.2 (D.C. Cir. 2023) (explaining at an earlier stage of the case that Section 508 "creates exceptions for users of 'national security systems' . . . but the government ha[d] not argued that [the] exception applied"). Section 508 incorporates the definition of a "national security system" at 40 U.S.C. § 11103(a). 29 U.S.C. § 794d(a)(5). That statute provides:

> (a) Definition.—
>
>> (1) National security system.—In this section, the term "national security system" means a telecommunications or information system operated by the Federal Government, the function, operation, or use of which—
>>
>>> (A) involves intelligence activities;
>>>
>>> (B) involves crypotologic activities related to national security;
>>>
>>> (C) involves command and control of military forces;
>>>
>>> (D) involves equipment that is an integral part of a weapon or weapons system; or
>>>
>>> (E) subject to paragraph (2), is critical to the direct fulfillment of military or intelligence missions.
>>
>> (2) Limitation.—Paragraph (1)(E) does not include a system to be used for routine administrative and business applications (including payroll, finance, logistics, and personnel management applications).

40 U.S.C. § 11103(a). The definition of "national security systems" in 40 U.S.C. § 11103(a) is virtually identical to the definition of the same term in the Federal Information Security

Modernization Act of 2014 ("FISMA"), 44 U.S.C. § 3551 *et seq.* The only difference is that FISMA considers one additional criterion under which an information system would qualify as a national security system—if it "is protected at all times by procedures established for information that have been specifically authorized under criteria established by an Executive order or an Act of Congress to be kept classified in the interest of national defense or foreign policy."  44 U.S.C. § 3552(b)(6)(A)(ii).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court draws the following facts, accepted as true, from Mr. Orozco's complaint and the parties' briefing.  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *see Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

Mr. Orozco joined the Federal Bureau of Investigation ("FBI") as an intelligence analyst in July 2012.  ECF No. 12 ¶ 12.  Because he is blind, Mr. Orozco uses screen access software that converts digital information to synthesized speech to perform his job.  *Id.* ¶ 11.  Mr. Orozco alleges that several technologies used by the FBI are inaccessible to blind employees who use screen access software.  *Id.* ¶ 26.  Those technologies include: (1) Sentinel, a "web-based case management system" that is used "to review and manage case files, create and review official communications, and process incoming leads;" (2) Enterprise Process Automation System ("EPAS"), a "web-based software system" that is used "to perform administrative tasks;" (3) Palantir software, a "web-based analytics software" that is used "to tie disparate intelligence resources together, search across and manage those resources, and track relationships among disparate entities;" (4) GMAN system, a "web-based software system" that is used "to search

across internal and external intelligence resources;" (5) VPN misattribution software that is used "to enable analysts to securely and anonymously access external data sources without identifying that access as coming from the FBI;" (6) secure mobile applications that are used "for messaging, calendars, contact management, and other typical and specialized mobile application functions;" and (7) other software systems that are used "for administrative and job-specific functions." *Id.* ¶¶ 26-62.  Mr. Orozco states that "[t]he FBI could have provided [him] and other blind employees with an alternative means of accessing these systems that allowed them to independently use the information and data involved, but did not do so." *Id.* ¶ 60.

In April 2019, Mr. Orozco filed administrative complaint with the FBI's equal employment opportunity ("EEO") office, alleging discrimination on the basis of Section 508 of the Rehabilitation Act of 1973, codified as amended in 29 U.S.C. § 794d. *Id.* ¶ 16.  He filed a courtesy copy of his complaint with the FBI's Office of the Chief Information Officer's Accessibility Program Office ("APO"). *Id.* ¶ 17.  In August 2019, the FBI issued a final agency decision dismissing Mr. Orozco's EEO complaint for lack of jurisdiction. *Id.* ¶ 18; *see* ECF No 13-1, at 2. It referred him to the APO to inquire about the status of his complaint there.  ECF No. 12 ¶ 18; *see* ECF No 13-1, at 2.

Mr. Orozco timely filed this civil action in November 2019.  ECF No. 1; ECF No. 12 ¶ 22. He alleges violations of Section 508 and seeks injunctive and declaratory relief, attorney's fees, and costs.  ECF No. 12, at 8-10.  In October 2021, the court (Sullivan, J.) dismissed the suit on the ground that Section 508 does not provide a cause of action for a federal employee to bring suit against his employer. *Orozco v. Garland*, No. 19-CV-3336, 2021 WL 4502072, at *3-6 (D.D.C. Oct. 1, 2021).  In February 2023, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded, holding that Section 508 "provide[s] a private right of action to any individual with

a disability, including a federal employee, who first files an administrative complaint about inaccessible technology" and then seeks injunctive and declaratory relief. *Orozco*, 60 F.4th at 692.

On remand, the Attorney General moves to partially dismiss Mr. Orozco's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). She argues that the four systems—Sentinel, Palantir, GMAN, and VPN—are "national security systems" that Congress exempted from Section 508, meaning that Mr. Orozco's claims about the four systems are barred by sovereign immunity. The motion has been fully briefed and is ripe for disposition. ECF Nos. 45, 47, 49.

### III.    LEGAL STANDARD

"Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is appropriate if a claim is barred by sovereign immunity." *Groce v. Rodriguez*, 743 F. Supp. 3d 244, 248 (D.D.C. 2024). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Id.* (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The plaintiff "bears the burden of establishing that sovereign immunity has been abrogated." *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012).

In reviewing a motion to dismiss under Rule 12(b)(1), the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). The court may also "consider materials outside the pleadings" in resolving the motion. *Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253.

## IV.    DISCUSSION

In her partial motion to dismiss, the Attorney General argues that the United States has not waived sovereign immunity as it pertains to the four systems because they are expressly exempted from Section 508 as "national security systems."  ECF No. 45, at 2; *see* 29 U.S.C. § 794d(a)(5) ("[Section 508] shall not apply to national security systems, as that term is defined in [40 U.S.C. § 11103(a)].").  Mr. Orozco responds that a Rule 12(b)(1) motion is not an appropriate vehicle to decide the question, and he further disputes the Attorney General's characterization of the four systems.  ECF No. 47, at 3-8.  The court concludes that it can decide the issue in the context of a Rule 12(b)(1) motion, and it further holds that the four systems are expressly exempted from Section 508.  Accordingly, the United States has not consented to suit and the claims concerning the four systems must be dismissed for lack of subject-matter jurisdiction.

### A.    The Court Can Consider the Question Under Rule 12(b)(1)

Mr. Orozco contends that the court cannot or should not decide whether the four systems are "national security systems" on a Rule 12(b)(1) motion to dismiss.  ECF No. 47, at 3-8. Specifically, he argues that the court must resolve factual issues to answer the question, *id.* at 3-5, meaning that the court should convert the motion into one for summary judgment, *id.* at 5, at which point disputed issues of material fact preclude summary judgment, *id.* at 5-7, and discovery is warranted, *id.* at 7-8.  The court finds these arguments unavailing.

To begin, there is no basis to convert the motion to dismiss under Rule 12(b)(1) into a motion for summary judgment under Rule 56.  While a court may convert a Rule 12(b)(*6*) motion into a motion for summary judgment, there is little precedent for converting a Rule 12(b)(*1*) motion into a motion of summary judgment.  *See Haase v. Sessions*, 835 F.2d 902, 905-06 (D.C. Cir. 1987).  *But see Am. Farm Bureau v. U.S. Env't Prot. Agency*, 121 F. Supp. 2d 84, 104

6

(D.D.C. 2000). That is unsurprising given that, unlike with a motion under Rule 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction" under Rule 12(b)(1). *Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253.

Nor is there any basis to defer the jurisdictional question raised in the Attorney General's Rule 12(b)(1) motion until after discovery, which may be appropriate where the jurisdictional question is "inextricably intertwined" with the merits of the case. *NBC-USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 60 (D.D.C. 2010); *see Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992). The line between jurisdictional and substantive issues in this case is cut and dry. Mr. Orozco's substantive claim turns on whether the FBI allows him "access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." 29 U.S.C. § 794d(a)(1)(A)(i); *see* ECF No. 12 ¶¶ 63-72. The jurisdictional question presently before the court is whether some of the technologies Mr. Orozco uses at work are "national security systems" and thereby excluded from Section 508's accessibility mandate. ECF No. 45, at 2-3. While both questions concern the same statute, that is not enough. *See Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000) (noting that "the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute"). Rather, the loadbearing question is "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Id.*; *see* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350 (4th ed. 2024). Here, it does not, and the court may decide the jurisdictional question without broaching the substantive requirements of Section 508.

## B.   The Four Systems Are "National Security Systems" Exempted from Section 508

In support of her motion to dismiss, the Attorney General provided declarations from Laura Rodriguez-McCoy, the Acting Authorizing Official in the FBI's Office of the Chief Information Officer, ECF No. 45-1, and from Jeff Bauerlein, the FBI's Chief Information Officer and Assistant Director over the FBI's Office of Chief Information Officer, ECF No. 45-2.  Ms. Rodriguez-McCoy avers that each of the four systems at issue "meets one or more of the criteria specified in 40 U.S.C. § 11103(a) and therefore qualifies as a national security system."  ECF No. 45-1 ¶ 20. As support, she relies on the fact that each of the four systems has been cataloged in an FBI database as being a "national security system" under FIMSA in the last three years, and upon her own review of the systems against the criteria in 40 U.S.C. § 11103(a).  ECF No. 45-1 ¶¶ 19-20.

In response, Mr. Orozco argues that the FBI's declarations fall short of what Section 508 requires.  *See* ECF No. 47, at 5-7.  He also counters with a declaration of his own.  ECF No. 47-1. In it, he explains that his work does not involve national security and that he routinely uses the four systems at issue here to access non-classified information.  *Id.* ¶¶ 4, 6, 12, 17, 20, 23.

It is well-established that courts will defer to the executive branch in cases implicating national security.  *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001) (noting that "terrorism or other special circumstances" might warrant "heightened deference to the judgments of the political branches"); *Dep't of the Navy v. Egan*, 484 U.S. 518, 530 (1988) (explaining that "courts traditionally have been reluctant to intrude upon the authority of the executive in military and national security affairs"); *Schaerr v. Dep't of Just.*, 69 F.4th 924, 929 (D.C. Cir. 2023) ("Because withholding national security information is 'a uniquely executive purview,' [courts] exercise great caution before compelling an agency to release such information." (quoting *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012)); *Taylor v. Dep't of the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982) (according the "utmost deference" to classification affidavits).

Mr. Orozco provides no reason to deviate from that deferential approach here. The text of Section 508 plainly states that its accessibility requirements "do[] not apply to national security systems." 29 U.S.C. § 794d(a)(5). The determination of what constitutes a "national security system" falls to agency management, *see* 44 U.S.C. § 3557, and here the FBI has submitted documentation that it has classified these systems as "national security systems." ECF No. 45-1 ¶¶ 9, 17-20. While Mr. Orozco criticizes these statements as "a very high level, abstract conclusion," ECF No. 47, at 6, courts have rejected similar arguments in analogous situations concerning national security under the Freedom of Information Act, 5 U.S.C. § 552, *see, e.g.*, *Magassa v. Transp. Sec. Admin.*, No. 22-5155, 2023 WL 8826564, at *1 (D.C. Cir. Dec. 21, 2023) (per curiam) (rejecting appellant's contention that the agency's justification for withholding information concerning transportation security was "too vague and general").

The court thus concludes that the four systems are "national security systems" and are exempted from Section 508's coverage. 29 U.S.C. § 794d(a)(5). Accordingly, the United States has not waived its sovereign immunity as it pertains to the systems and Mr. Orozco's claims relating to the four systems must be dismissed.

V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Partial Motion to Dismiss for Lack of Jurisdiction, ECF No. 45, is **GRANTED** and Mr. Orozco may not pursue Section 508 claims related to the FBI's Sentinel, Palantir, GMAN, and VPN systems as defined above. It is further ordered that the parties shall file a joint status report within fourteen days of this opinion proposing next steps in the matter, including whether the parties expect further motions under Rule 12, in which case they should propose a briefing schedule; whether the court

should hold an initial scheduling conference; and whether the parties would benefit from a referral for mediation.

    **SO ORDERED.**

_/s/ L. Alikhan_
_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 4, 2025