**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JAHINNSLERTH OROZCO,<br><br>*Plaintiff*,<br><br>v.<br><br>PAMELA J. BONDI,<br><br>*Defendant*. | Civil Action No. 19 - 3336 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jahinnslerth Orozco brings this action against Attorney General of the United States Pamela J. Bondi, in her official capacity, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in connection with his employment at the Federal Bureau of Investigation ("FBI"). ECF No. 12. Mr. Orozco has moved for leave to file a second amended complaint. ECF No. 58. The motion is fully briefed, ECF Nos. 58, 64, 65, and the Attorney General has moved for leave to file a surreply, ECF No. 66. For the following reasons, the court will grant in part and deny in part Mr. Orozco's motion and deny the Attorney General's motion.

## I. STATUTORY BACKGROUND

"The Rehabilitation Act of 1973 '"was the first major federal statute designed to provide assistance to the whole population" of individuals with disabilities.'" *Orozco v. Garland*, 60 F.4th 684, 685 (D.C. Cir. 2023) (quoting *Solomon v. Vilsack*, 763 F.3d 1, 4 (D.C. Cir. 2014)). It "aims to 'maximize opportunities for individuals with disabilities' to participate in 'competitive integrated employment' and to 'ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities.'" *Ali v. Regan*, 111 F.4th 1264, 1268

(D.C. Cir. 2024) (quoting 29 U.S.C. § 701(b)(2)-(3)).  Although Mr. Orozco brings a claim under Section 508 of the Rehabilitation Act, *see* ECF No. 12 ¶ 1, several provisions of the law are relevant here.[1]

Section 501, which is codified at 29 U.S.C. § 791, "prohibits disability discrimination in federal employment" and "is governed by the same standards as Title I of the [Americans with Disabilities Act]." *Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 379 n.5 (D.C. Cir. 2025). Under the Rehabilitation Act's remedial provision, Section 505, "any employee or applicant for employment" bringing "any complaint" under Section 501 is entitled to the "remedies, procedures, and rights set forth in [S]ection 717 of the Civil Rights Act of 1964."  29 U.S.C. § 794a(a)(1).

Section 504, which is codified at 29 U.S.C. § 794, prohibits disability discrimination against any person "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." *Id.* § 794(a).  Despite banning discrimination "under any program or activity conducted by any Executive agency," *id.*, Congress limited the remedies available for Section 504 violations. As detailed in Section 505(a)(2), only persons "aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under [Section 504]" are entitled to a remedy.  *Id.* § 794a(a)(2).  And, unlike Section 501 complainants, whose remedies flow from Section 717 of the Civil Rights Act of 1964, *id.* § 794a(a)(1), eligible Section 504

---

[1] The Rehabilitation Act is codified at 29 U.S.C. § 701 *et seq.*, but litigants—including the parties here—and courts often refer to various statutory provisions from the public laws that enacted them. *See generally* ECF Nos. 58, 64, 65; *Lane v. Peña*, 518 U.S. 187 (1996).  For example, Mr. Orozco brings a Section 508 claim, as authorized by 29 U.S.C. § 794d.  The court will refer to Rehabilitation Act Sections 501, 504, 505, and 508, which correspond to 29 U.S.C. §§ 791, 794, 794a, and 794d, respectively.

complainants receive the "remedies, procedures, and rights set forth in [T]itle VI" of that law, *id.* § 794a(a)(2).

Section 508, which is codified at 29 U.S.C. § 794d, imposes requirements on the accessibility of technologies for individuals with disabilities. As relevant here, it requires federal agencies to "ensure . . . that the electronic and information technology allows . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities." *Id.* § 794d(a)(1)(A)(i). Under Section 508, "any individual with a disability filing a complaint" is entitled to the "remedies, procedures, and rights" provided in Section 505(a)(2) and Section 505(b)—meaning that Section 508 complainants, like eligible Section 504 complainants, receive the "remedies, procedures, and rights set forth in [T]itle VI," *id.* § 794a(a)(2); *see id.* § 794d(f)(3), although the parties dispute how that cross-reference to Title VI applies to a claim for damages against the United States.

Section 508 expressly exempts "national security systems" from its accessibility requirements. *Id.* § 794d(a)(5); *see Orozco*, 60 F.4th at 690 n.2 (explaining at an earlier stage of the case that Section 508 "creates exceptions for users of 'national security systems' . . . but the government ha[d] not argued that [the] exception applie[d]"). Section 508 incorporates the definition of a "national security system" in 40 U.S.C. § 11103(a). 29 U.S.C. § 794d(a)(5). That statute provides:

> (a) Definition.—
>
>> (1) National security system.—In this section, the term "national security system" means a telecommunications or information system operated by the Federal Government, the function, operation, or use of which—

> (A) involves intelligence activities;
>
> (B) involves cryptologic activities related to national security;
>
> (C) involves command and control of military forces;
>
> (D) involves equipment that is an integral part of a weapon or weapons system; or
>
> (E) subject to paragraph (2), is critical to the direct fulfillment of military or intelligence missions.
>
> (2) Limitation.—Paragraph (1)(E) does not include a system to be used for routine administrative and business applications (including payroll, finance, logistics, and personnel management applications).

40 U.S.C. § 11103(a). The definition of "national security system" in Section 11103(a) is virtually identical to the definition of the same term in the Federal Information Security Modernization Act of 2014 ("FISMA"), 44 U.S.C. § 3551 *et seq.* The only difference is that FISMA considers one additional criterion under which an information system would qualify as a national security system: if it "is protected at all times by procedures established for information that have been specifically authorized under criteria established by an Executive order or an Act of Congress to be kept classified in the interest of national defense or foreign policy." 44 U.S.C. § 3552(b)(6)(A)(ii).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The court accepts the following facts as true from Mr. Orozco's amended complaint, ECF No. 12, and proposed second amended complaint, ECF No. 65-2, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mr. Orozco joined the FBI as an intelligence analyst in July 2012. ECF No. 65-2 ¶ 12. Because he is blind, Mr. Orozco uses screen access software that converts digital information

to synthesized speech to perform his job.  *Id.* ¶ 11.  In April 2019, he filed an administrative complaint with the FBI's equal employment opportunity ("EEO") office, alleging that the FBI was failing to provide accessible electronic and information technology in violation of Section 508 of the Rehabilitation Act.  *Id.* ¶ 16; *see id.* ¶¶ 1-3; *see also* 28 C.F.R. § 39.170(d)(4); 29 C.F.R. § 1614.106(a).  He also filed a courtesy copy of his complaint with the FBI's Office of the Chief Information Officer's Accessibility Program Office ("APO").  ECF No. 65-2 ¶ 17.  In August 2019, the FBI issued a final agency decision dismissing Mr. Orozco's EEO complaint for lack of jurisdiction.  *Id.* ¶ 18; *see* ECF No. 13-1, at 2.  It referred Mr. Orozco to the APO to inquire about the status of his complaint there.  ECF No. 65-2 ¶ 19; *see* ECF No. 13-1, at 2.

Mr. Orozco timely filed this civil action in November 2019.  ECF No. 1; ECF No. 12 ¶ 22; ECF No. 65-2 ¶ 22.  In his amended complaint, Mr. Orozco alleged that several technologies used by the FBI are inaccessible to blind employees who use screen access software.  ECF No. 12 ¶ 26.  Those technologies included: (1) Sentinel, a "web-based case management system" used "to review and manage case files, create and review official communications, and process incoming leads"; (2) Enterprise Process Automation System ("EPAS"), a "web-based software system" used "to perform administrative tasks such as travel requests, expense reimbursement, security alerts, access to applications and promotions, and outside work alerts"; (3) Palantir, a "web-based analytics software" used "to tie disparate intelligence resources together, search across and manage those resources, and track relationships among disparate entities"; (4) Global Mission Analytics ("GMAN"), a "web-based software system" used "to search across internal and external intelligence resources"; (5) Virtual Private Networking ("VPN") misattribution software, which "enable[s] analysts to securely and anonymously access external data sources without identifying

that access as coming from the FBI"; (6) secure mobile applications used "for messaging, calendars, contact management, and other typical and specialized mobile application functions"; and (7) other software systems used "for administrative and job-specific functions." *Id.* ¶¶ 26-62. Mr. Orozco asserted that "[t]he FBI could have provided [him] and other blind employees with an alternative means of accessing these systems that [would have] allowed [the employees] to independently use the information and data involved, but did not do so." *Id.* ¶ 60. Mr. Orozco sought injunctive and declaratory relief, attorney's fees, and costs for the alleged Section 508 violations. *Id.* at 9-10.

In October 2021, the court (Sullivan, J.) dismissed the suit on the ground that Section 508 does not provide a cause of action for a federal employee against his employer. ECF No. 22, at 9-18; *see Orozco v. Garland*, No. 19-CV-3336, 2021 WL 4502072, at *3-6 (D.D.C. Oct. 1, 2021), *rev'd*, 60 F.4th 684 (D.C. Cir. 2023). The court reasoned that Section 508's provision of "remedies, procedures, and rights" to "any individual with a disability," 29 U.S.C. § 794d(f)(3), only supplies a cause of action to those aggrieved by a "Federal provider of . . . assistance," *id.* § 794a(a)(2), because Section 505(a)(2) imposes that limitation on Section 504 claims and Section 508 incorporates the limitation by cross-referencing Section 505(a)(2), ECF No. 22, at 9-14; *see Orozco*, 2021 WL 4502072, at *3-5. In February 2023, the U.S. Court of Appeals for the D.C. Circuit reversed and remanded, holding that Section 508 "provide[s] a private right of action to any individual with a disability, including a federal employee, who first files an administrative complaint about inaccessible technology" and then seeks injunctive or declaratory relief. *Orozco*, 60 F.4th at 692. As the Court explained, Section 508 incorporates Section 505(a)(2)'s "remedies, procedures, and rights"—that is, those in Title VI—but does not

"bring[] with it [Section 505(a)(2)'s] limitations on who can sue." *Id.* at 688.  Instead, the "most natural meaning" of the Rehabilitation Act is that Section 508 places its *own* limitations on who can sue ("any individual with a disability") and therefore displaces the limitations imposed by Section 505(a)(2). *Id.* at 689; *see* 29 U.S.C. § 794d(f)(3).

On remand, the case was reassigned to the undersigned, Dec. 14, 2023 Docket Entry, and then-Attorney General Merrick Garland moved to partially dismiss Mr. Orozco's complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), ECF No. 45.  He argued that four of the systems in Mr. Orozco's amended complaint—Sentinel, Palantir, GMAN, and VPN— are "national security systems" and therefore exempt from Section 508's accessibility mandate; as a result, the United States has not waived sovereign immunity and consented to be sued for an agency's alleged failure to make those systems accessible to an employee with a disability.  ECF No. 45, at 5-8.  The court granted the Attorney General's partial motion to dismiss, holding that the United States is immune from suit over the four contested systems because they are "national security systems" and not subject to Section 508.  ECF No. 54, at 8-9; *see Orozco v. Bondi*, No. 19-CV-3336, 2025 WL 689193, at *4-5 (D.D.C. Mar. 4, 2025).

After the court resolved the Rule 12(b)(1) motion, it granted the parties' request to stay the case while they explored a possible resolution of Mr. Orozco's claims.  ECF No. 56; Apr. 3, 2025 Minute Order.  The parties did not reach a settlement and Mr. Orozco informed the court that "[b]ased on the information shared during the recent stay," he was "considering moving for leave to amend the complaint."  ECF No. 57, at 1.

Mr. Orozco subsequently filed a motion seeking leave to file a second amended complaint.  ECF No. 58.  In his motion, he provided a proposed second amended complaint.  ECF No. 58-1.

This version of the second amended complaint contained four revisions from the first amended complaint. First, Mr. Orozco "removed any reference to the Palantir, GMAN, and VPN systems, as well as the portions of Sentinel that relate to national security." ECF No. 58, at 1. Second, he alleged that Sentinel "includes both 'national security systems' exempt from Section 508 but also incorporates routine business and administrative systems that are not exempt." *Id.* at 5. The proposed second amended complaint therefore asserts that "five . . . administrative systems accessed via [a] Sentinel dashboard" are covered by the Rehabilitation Act, *id.*; *see* ECF No. 58-1 ¶¶ 27-56, notwithstanding the court's dismissal of Sentinel-based claims, ECF No. 54, at 8-9; *see Orozco*, 2025 WL 689193, at *5. Third, Mr. Orozco added new details to his allegations about EPAS, ECF No. 58-1 ¶¶ 61-67; mobile Android applications, *id.* ¶¶ 72-85; and what he had previously characterized as "other software systems" used for "administrative and job-specific functions," ECF No. 12 ¶ 57; *see* ECF No. 58, at 6. In place of the catchall for "other software systems," the proposed second amended complaint included new allegations about "iDATA"— the "Intelligence Data Association and Tagging Application," ECF No. 64, at 19—which "is a set of codes and citations that [FBI] employees use to tag their work assignments or documents," ECF No. 58-1 ¶ 87; *see id.* ¶¶ 86-106. Finally, Mr. Orozco added a request for compensatory damages. ECF No. 58, at 2; *see* ECF No. 58-1, at 15.

Attorney General Bondi filed a partial opposition to Mr. Orozco's motion. ECF No. 64. She contended that Mr. Orozco was improperly seeking to relitigate allegations about Sentinel that the court had already dismissed, *id.* at 4-14, and that adding claims about Sentinel would be futile because they would again be subject to dismissal, *id.* at 15-19. The Attorney General also asserted that the iDATA allegations and compensatory damages claim are untimely and futile. *Id.* at 21-28.

She did not, however, contest any substantive amendments relating to EPAS or the mobile Android applications. *See id.* at 29.

Mr. Orozco filed a reply that withdrew his proposed second amended complaint, ECF No. 58-1, and included a revised proposed pleading, ECF No. 65, at 1 n.1; *see* ECF No. 65-2. Exhibit A to Mr. Orozco's reply is a clean version of the proposed complaint, and Exhibit C is a redline comparing his revised version to his previously proposed one. ECF Nos. 65-2, 65-4. The court will cite the former version as it evaluates the parties' arguments about amendment. In the revised pleading, Mr. Orozco has withdrawn all claims related to the Sentinel system, but he has retained his new allegations concerning EPAS, mobile Android applications, and iDATA, as well as his claim for compensatory damages. *See* ECF No. 65-2 ¶¶ 26-75; ECF No. 65-4, at 4-13.

Mr. Orozco's motion for leave to amend is fully briefed. ECF Nos. 58, 64, 65. The Attorney General has sought leave to file a surreply. ECF No. 66. Despite indicating that he opposes the request to file a surreply, *id.* at 1, Mr. Orozco did not file an opposition to the Attorney General's motion for leave.

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). The court should freely grant such leave "when justice so requires." *Id.* R. 15(a)(2). "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). However, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive,'" "'repeated failure to cure deficiencies by [previous]

amendments,'" or "'futility of amendment.'"  *Id.* (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "[U]nder Rule 15, 'the non-movant generally carries the burden in persuading the court to deny leave to amend.'"  *In Lux Rsch. v. Hull McGuire PC*, No. 23-CV-523, 2023 WL 8190821, at *2 (D.D.C. Nov. 27, 2023) (quoting *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004)).  "If the district court denies leave [to amend], it must state its reasons." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014).

An amendment is futile "if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  "Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is appropriate if a claim is barred by sovereign immunity."  *Groce v. Rodriguez*, 743 F. Supp. 3d 244, 248 (D.D.C. 2024).  The plaintiff "bears the burden of establishing that sovereign immunity has been abrogated."  *Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012).  In reviewing a Rule 12(b)(1) motion, the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  The court may also "consider materials outside the pleadings" in resolving the motion.  *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## IV.    DISCUSSION

The court addresses the contested amendments—concerning iDATA and compensatory damages—in turn and concludes that both would be futile.  Accordingly, the court will deny Mr. Orozco's motion for leave to add these allegations to his second amended complaint and will

direct him to file an amended complaint that contains only the remaining undisputed changes from the proposed second amended complaint. *See* ECF No. 65-2.

### A.    iDATA Allegations

The Attorney General contends that Mr. Orozco's iDATA allegations are unduly delayed and futile. ECF No. 64, at 19-23. She asserts that the iDATA claim is futile twice-over: first, it would be dismissed for lack of jurisdiction under Rule 12(b)(1) because iDATA is a "national security system" and thus exempt from Section 508, *id.* at 22-23; second, it would be dismissed for failure to state a claim under Rule 12(b)(6) because Mr. Orozco did not administratively exhaust his remedies, *id.* at 21-22. The court agrees with the Attorney General that iDATA is a national security system; accordingly, it need not reach her arguments concerning delay and administrative exhaustion of the claim.

In support of her argument that the iDATA allegations would not survive a Rule 12(b)(1) motion, the Attorney General has provided a declaration from Laura Rodriguez-McCoy, the Authorizing Official in the FBI's Office of the Chief Information Officer. ECF No. 64-1. Ms. Rodriguez-McCoy states that iDATA "meets one or more of the criteria specified in 40 U.S.C. § 11103(a) and therefore qualifies as a national security system." *Id.* ¶ 21. She reached that conclusion based on the FBI's decision to catalogue iDATA in its internal database as a "national security system" under the FISMA within the last three years, *id.* ¶ 20, and her own "determination that iDATA is a national security system" under Section 11103(a), *id.* ¶ 22.

Ms. Rodriguez-McCoy's declaration is dispositive. As the court reasoned when it granted the Attorney General's partial motion to dismiss claims challenging other national security systems, "[i]t is well-established that courts will defer to the executive branch in cases implicating

national security." ECF No. 54, at 8; *see Orozco*, 2025 WL 689193, at *4 (collecting cases). That same deference applies to the iDATA system here.

Mr. Orozco asserts that Ms. Rodriguez-McCoy has incorrectly and cursorily classified iDATA as a national security system and that the court's justification for deferring to the executive branch is unsound. ECF No. 65, at 6-11. The court is not persuaded and will continue to defer to the FBI's classification decision. To begin, Mr. Orozco's attempt to undermine Ms. Rodriguez-McCoy's conclusion that iDATA is a national security system is inconsistent with his own proposed second amended complaint. Mr. Orozco argues that iDATA is "solely an employee-facing system with challenged functions that are entirely routine administrative and business applications." *Id.* at 7 (asserting that iDATA is "purely administrative"). Yet his proposed second amended complaint characterizes iDATA as "a set of codes and citations that employees use to tag their work assignments or documents." ECF No. 65-2 ¶ 56. The court has no occasion to interpret the scope of Section 11103(a)(1), but in dispensing with Mr. Orozco's arguments, it notes that systems "critical to the direct fulfillment of military or intelligence missions" are "national security systems," 40 U.S.C. § 11103(a)(1)(E), as long as they are not "used for routine administrative and business applications (including payroll, finance, logistics, and personnel management applications)," *id.* § 11103(a)(2). The term "national security system" therefore encompasses certain "critical" but ancillary systems. *Id.* § 11103(a)(1)(E).

Mr. Orozco also alleges in his proposed second amended complaint that the challenged iDATA functions are "routine administrative and business operations," ECF No. 65-2 ¶ 61—essentially parroting the statutory limitation on what constitutes a "national security system," *see* 40 U.S.C. § 11103(a)(2) (excluding systems "used for routine administrative and business

12

applications"). The court need not accept Mr. Orozco's legal conclusions about the scope of Section 11103(a), *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015), but it does consider his characterization of the platform as helping FBI employees organize substantive work product and his concession that "these iDATA functions do not involve intelligence, cryptologic, military or weapons activities *even if they are critical to fulfillment of intelligence missions*," ECF No. 65-2 ¶ 63 (emphasis added). Put differently, Mr. Orozco appears to agree that iDATA is critical to the FBI's intelligence work, although he argues that the system "can be remediated without affecting national security concerns." ECF No. 65-2 ¶ 66. But that inverts the standard imposed by the Rehabilitation Act. Section 508 exempts *any* national security system; it does not, as Mr. Orozco suggests, require an agency to make any electronic or information system accessible if it can do so without "affecting national security concerns." *Id.* There may be a case in which an agency "incorrectly categorizes an administrative tool as a national security system," ECF No. 65, at 7, but that is not this case because Mr. Orozco's own allegations are consistent with Ms. Rodriguez-McCoy's conclusion. The court sees no basis to disturb the FBI's determination that iDATA is a national security system.

Mr. Orozco fares no better in arguing that Ms. Rodriguez-McCoy's declaration is "conclusory" because it "abstractly mentions iDATA without mention of specific functions" and fails to identify which of the Section 11103(a) criteria apply. *Id.* at 9. The court reads the declaration differently. While Ms. Rodriguez-McCoy did not specify the contested iDATA functions explicitly, she did so by reference: when assessing whether iDATA is exempt from Section 508, she "reviewed the statements contained in paragraph 87 of [Mr. Orozco's] Second Amended Complaint pertaining to certain functions that may be performed in [the system]." ECF

No. 64-1 ¶ 22.  Mr. Orozco cannot reasonably suggest that the declaration is abstract when the reviewing official considered his specific allegations.  Further, Ms. Rodriguez-McCoy explains that iDATA is part of the package that the FBI reviews before "authorizing a system to operate . . . within the FBI's classified computer network enclave."  *Id.*  She also determined that the purportedly administrative functions identified by Mr. Orozco in fact "facilitate FBI employees' performance of the FBI's mission while operating within iDATA."   *Id.*  Ms. Rodriguez-McCoy's conclusion based on these observations is neither abstract nor unexplained.

Finally, the court can quickly dispense with Mr. Orozco's suggestion that deference to the FBI's classification is unwarranted because this case does not involve a "breach of national security risk" like terrorism, nuclear policy, or the disclosure of classified material.  ECF No. 65, at 8-9.  Mr. Orozco argues that courts should conduct a more searching inquiry into the executive branch's national security determinations when "no actual risk of national security danger is involved in achieving compliance with [the Rehabilitation Act]."  *Id.* at 8.  That approach is contradicted by the statutory text.  The Rehabilitation Act does not define the term "national security system" based on the role an electronic or information system plays in defending against certain types of national security risks.  Rather, any system that "is critical to the direct fulfillment of military or intelligence missions" is exempt from Section 508's requirement that agencies provide accessibility accommodations.  40 U.S.C. § 11103(a)(1)(E); *see* 29 U.S.C. § 794d(a)(5).  The court has no authority to read an atextual limitation into "natural security system," especially one that would disturb the balance Congress struck in the Rehabilitation Act.  Accordingly, Mr. Orozco's iDATA amendments are futile because they would not survive a Rule 12(b)(1)

motion to dismiss, and the court will deny his request to amend his complaint to include iDATA-based claims.[2]

### B.      Compensatory Damages

The Attorney General offers three reasons for denying Mr. Orozco's proposed amendment concerning compensatory damages.  First, she asserts that Mr. Orozco's failure to raise the claim earlier constitutes "inexcusable" delay and causes undue prejudice.  ECF No. 64, at 24-25.  Next, the Attorney General contends that Mr. Orozco's request for compensatory damages is futile because the United States has not waived its sovereign immunity for such a claim, meaning that the claim would be dismissed under Rule 12(b)(1).  *Id.* at 25-27.  Finally, she maintains that even if damages are available under Section 508, Mr. Orozco's proposed second amended complaint fails to sufficiently allege any compensable harms and would be dismissed under Rule 12(b)(6). *Id.* at 27-28.  The court agrees with the Attorney General that, under D.C. Circuit precedent, the United States has not waived sovereign immunity for Section 508 damages claims.  Accordingly, any amendment concerning compensatory damages would be futile because it would not survive a motion to dismiss for lack of subject-matter jurisdiction.[3]

"[S]overeign immunity is 'jurisdictional in nature.'"  *Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)).  The

---

[2] Because the court agrees with the Attorney General that the iDATA claims are futile on the grounds identified in her opposition, ECF No. 64, the court will deny her request to file a surreply—which addresses only the iDATA claims, *see* ECF No. 66-2—as moot.

[3] Because the court concludes that Mr. Orozco's damages claim would fail for lack of jurisdiction, it declines to reach the Attorney General's arguments concerning timeliness and futility based on failure to state a claim.

court lacks jurisdiction over suits against the federal government "unless a statute's text 'unequivocally' waives [immunity]." *Santos v. Collins*, No. 24-CV-1759, 2025 WL 1905596, at *8 (D.D.C. July 10, 2025) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). "Any such statute must clear a high bar: a suit for damages will not lie 'if there is a plausible interpretation of the statute that would not authorize' those damages." *Id.* (quoting *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290-91 (2012)). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192.

A plaintiff bringing a Section 508 claim is entitled to the same "remedies, procedures, and rights" in, as relevant here, Section 505(a)(2). 29 U.S.C. § 794d(f)(3). As the court explained, *supra* Part I, Section 505(a)(2) provides for Title VI remedies to a subset of Section 504 claims— those alleging discrimination "under any program or activity receiving Federal financial assistance," but not those alleging discrimination "under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a); *see id.* § 794a(a)(2). In plain terms, Section 508 gives a plaintiff like Mr. Orozco the same "remedies, procedures, and rights set forth" in Title VI through a cross-reference to Section 505(a)(2), which itself only addresses remedies for a subset of Section 504 claims. And Title VI, 42 U.S.C. § 2000d *et seq.*, allows plaintiffs to recover monetary damages. *Lane*, 518 U.S. at 191. The relevant question is thus whether the availability of damages under Title VI, paired with Section 508's provision of remedies "set forth" in Title VI through a cross-reference to Section 505(a)(2), unequivocally waives the United States' immunity from suit for compensatory damages.

In the Attorney General's view, D.C. Circuit and Supreme Court precedent forecloses a finding of any such waiver. ECF No. 64, at 25-27 (citing *Dorsey v. U.S. Dep't of Lab.*, 41 F.3d

1551 (D.C. Cir. 1994), and *Lane*, 518 U.S. at 192-93).  In *Dorsey*, a Job Corps participant alleged that he had been discriminated against because of his disability and then filed suit alleging a Section 504 violation.  41 F.3d at 1553.  When the plaintiff appealed the dismissal of his request for compensatory damages, the D.C. Circuit explained that he needed to establish both "that claimants may recover monetary relief in private Title VI actions"—which would make compensatory damages under Section 504 available through Section 505(a)(2)'s remedial provision—and that claimants "may do so against Executive agencies despite sovereign immunity."  *Id.* at 1554.  The Court was skeptical that Title VI supplied a private right of action for compensatory damages, noting that any right would have to be judicially implied because there was no express right in the statutory text.  *Id.*  But the Court held that "[e]ven if there is an implied right of action for damages under Title VI, and thus under [Section] 504, it cannot exist as against the federal government."  *Id.* at 1554-55.  As the Court explained, "[b]ecause a [Section] 504 private right of action for damages—against anyone—must be judicially implied from a statute silent on the subject, [the plaintiff] is unable to point to any explicit language in the Rehabilitation Act (or in Title VI) waiving the government's sovereign immunity."  *Id.* at 1555.

Shortly thereafter, the Supreme Court in *Lane* granted certiorari to resolve a split between the D.C. Circuit in *Dorsey* and the Ninth Circuit, which had allowed a Section 504 claim for compensatory damages to proceed against the federal government.  *Doe v. Att'y Gen. of U.S.*, 941 F.2d 780, 785-95 (9th Cir. 1991); *see Lane*, 518 U.S. at 190-91.  The Court agreed with the result in *Dorsey* and held that "[t]he clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of [Section] 504 is lacking."  *Lane*, 518 U.S. at 192.  But rather than ground its analysis in the lack of an express right

17

of action for compensatory damages under Title VI, as the *Dorsey* Court had done, the Supreme Court relied on Section 505(a)(2)'s provision of Title VI remedies to only the subset of Section 504 claims concerning the provision of "Federal financial assistance" and not those involving "Executive agenc[ies]." *Id.* at 192-93. The Court concluded that the "reference to 'Federal provider[s]' of financial assistance in [Section] 505(a)(2) does not, without more, establish that Congress has waived the Federal Government's immunity against monetary damages awards beyond the narrow category of [Section] 504(a) violations committed by federal funding agencies acting as . . . 'Federal provider[s].'" *Id.* at 193 (first and fifth alterations in original). The Court contrasted Section 505(a)(2)'s limited provision of remedies for claims against providers of "Federal financial assistance" with Section 505(a)(1)'s "broad language" providing "'*any complain[an]t* under [S]ection 501'" the remedies available under Section 717 of the Civil Rights Act of 1964, *id.* (emphasis added) (quoting 29 U.S.C. § 794a(a)(1)), and with the Civil Rights Act of 1991, in which Congress expressly made compensatory damages available for certain Section 501 violations, *id.* at 194; *see* Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1072 (1991).

Mr. Orozco argues that *Dorsey* is distinguishable and that *Lane* supports his view. ECF No. 65, at 13-14. He also relies on a recent case in this district in which the court held that "the federal government has waived its immunity from damages in Section 508 claims." *Santos*, 2025 WL 1905596, at *10-12; *see* ECF No. 65, at 13-14. In *Santos*, the court drew on the D.C. Circuit's decision in Mr. Orozco's earlier appeal—in which the Court held that Mr. Orozco had a cause of action for declaratory and injunctive relief under Section 508, *Orozco*, 60 F.4th at 688-91—to find a waiver of sovereign immunity for compensatory damages, *Santos*, 2025 WL 1905596, at *10-12. According to the *Santos* court, because Section 508 "extends Title VI's remedies 'to any individual

with a disability filing a [Section 508] complaint,'" and because "federal departments and agencies" are the "only possible defendants in a civil suit under [Section 508]," "Congress thus necessarily subjected federal departments and agencies to the Title VI remedies that [Section 508] incorporates," including monetary relief.  *Santos*, 2025 WL 1905596, at *11 (quoting 29 U.S.C. § 794d(f)(3)).

This court has carefully reviewed *Dorsey*, *Lane*, *Orozco*, and *Santos*, and it concludes that it must follow *Dorsey*'s holding, which was affirmed in *Lane* and remains undisturbed by *Orozco*. As noted, in *Dorsey*, the D.C. Circuit rejected the notion that Section 504 waives the federal government's sovereign immunity for compensatory damages claims because its remedial provision incorporates Title VI and Title VI does not contain an express waiver of sovereign immunity for damages suits.  41 F.3d at 1555.  As the *Dorsey* Court explained, the existence of any implied right of action for compensatory damages under Title VI would not be sufficient to waive sovereign immunity because such waivers must be explicit in the statutory text.  *Id.* at 1554-55.  The same is true here: for Section 508 to waive the federal government's sovereign immunity, Title VI must do so as well because the "remedies, procedures, and rights" available to Section 508 complainants mirror those granted to Title VI plaintiffs.  29 U.S.C. §§ 794a(a)(2), 794d(f)(3).[4]

To be sure, the court does not reach this conclusion without trepidation, as there appears to be some tension between the cases.  For example, the Supreme Court in *Lane* appeared to recognize

---

[4] Mr. Orozco characterizes *Dorsey* as "inapposite" because it involves Section 504 and not Section 508, ECF No. 65, at 14, but that fails to account for the D.C. Circuit's understanding of Title VI, which applies equally to Sections 504 and 508.

a limited waiver of sovereign immunity for compensatory damages claims against the federal government under Section 504 for "violations committed by federal funding agencies acting as . . . 'Federal provider[s].'"  518 U.S. at 193 (second alteration in original) (quoting 29 U.S.C. § 794a(a)(2)); *see id.* at 210-11 (Stevens, J., dissenting) ("To credit the Court's analysis, one must believe that Congress intended a damages remedy against a federal Executive agency acting indirectly in the provision of funding to nonfederal entities, but not against an agency acting directly in the conduct of its own programs and activities.").  That is inconsistent with the *Dorsey* Court's understanding that Title VI contains no waiver of sovereign immunity that carries through to any claim under Section 504.  *See* 41 F.3d at 1554-55 ("Even if there is an implied right of action for damages under Title VI, and thus under [Section] 504, it cannot exist as against the federal government.").  But that statement in *Lane* was dictum, as it was not necessary to support the Court's determination that Congress had not waived sovereign immunity for Section 504 claims for compensatory damages against an executive agency that was "*not* a 'Federal provider' of financial assistance."  518 U.S. at 195 (emphasis added) (quoting 29 U.S.C. § 794a(a)(2)); *see In re Grand Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019) ("[A] statement not necessary to a court's holding is dictum.").

Additionally, while the *Santos* court found a waiver of sovereign immunity for compensatory damages claims under Section 508, it did so without acknowledging or discussing *Dorsey*.  It also failed to reckon with the *Orozco* Court's narrow focus on whether a private right of action exists under Section 508 for "only injunctive and declaratory relief," not compensatory damages.  60 F.4th at 685.  The *Orozco* Court had no occasion to consider the availability of a Section 508 damages claim against the federal government because Mr. Orozco had not yet

requested any monetary relief.   Tr. of Oral Arg. at 15:25-16:01, *Orozco*, 60 F.4th 684 (No. 21-5238) ("Mr. Orozco is not seeking damages, which was the issue in *Lane v. Peña* . . . ."); *see Orozco*, 60 F.4th at 691 (explaining that "Congress already 'waive[d] the Government's immunity from actions seeking relief "other than monetary damages"'" under the Administrative Procedure Act, 5 U.S.C. § 702 (alteration in original) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999))).[5]

On balance, the court concludes that it is bound by the D.C. Circuit's sovereign immunity holding in *Dorsey*—which applies equally to Sections 504 and 508—and any reasoning necessary to support that decision, including the view that Title VI fails to explicitly waive the federal government's immunity for damages claims.   Until the D.C. Circuit revisits the question whether Title VI waives the federal government's sovereign immunity for damages claims—or holds that, despite its approach in *Dorsey*, its interpretation of Section 508's private right of action in *Orozco* applies with equal force to the scope of immunity for compensatory damages—this court has no authority to hold otherwise.   Accordingly, Mr. Orozco's claim for compensatory damages is futile because it would not survive a Rule 12(b)(1) motion to dismiss.

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Orozco's Motion for Leave to File Second Amended Complaint, ECF No. 58, is **DENIED** as it concerns any iDATA allegations

---

[5] To the extent the *Orozco* Court intended to recognize a waiver of sovereign immunity for a Section 508 claim for compensatory damages, one Circuit panel cannot overrule the decision of a previous one, meaning that *Dorsey* remains controlling.   *See Newman v. Moore*, 151 F.4th 472, 480 (D.C. Cir. 2025) ("We are bound by a prior panel decision 'unless intervening Supreme Court precedent' has 'effectively overrule[d], *i.e.*, eviscerate[d]' that decision." (alterations in original) (quoting *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1334 (D.C. Cir. 2024))).

and a request for compensatory damages and is **GRANTED** as to the remaining amendments. Mr. Orozco shall file a second amended complaint that complies with this order on or before April 9, 2026, and the Attorney General shall respond to the second amended complaint on or before April 23, 2026.  Fed. R. Civ. P. 12(a)(4)(A).  It is further **ORDERED** that the Attorney General's Motion for Leave to File Surreply, ECF No. 66, is **DENIED** as moot.

      **SO ORDERED.**

 

                                            _____

                                            LOREN L. ALIKHAN
                                            United States District Judge

Date:   March 26, 2026